IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK KAVAKICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1114 |
| | ) | |
| BENTLEYVILLE BOROUGH, | ) | Magistrate Judge Hay |
| a Pennsylvania Municipality, | ) | |
| LENA GREENFIELD, HENRY WILSON, | ) | |
| FRANK FIEM, WALTER WISNIESKI, | ) | |
| KENNETH YANKOWSKY, Individually | ) | |
| and as members of Bentleyville Borough | ) | |
| Council, DENNIS M. MAKEL, Individually | ) | |
| and as Solicitor for Bentleyville Borough, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

HAY, Magistrate Judge

In this action brought pursuant to 42 U.S.C. § 1983, Mark Kavakich ("Kavakich" or "the Plaintiff") contends in the Amended Complaint (Doc. 15) that he was deprived of his Fourteenth Amendment right to procedural due process when his job as Acting Chief of Police for the Bentleyville Borough Police Department was eliminated by the Borough Council's decision to abolish the local police force. Kavakich contends that individual Council members harbored resentment and malice toward him, and that their decision to eliminate the force, although allegedly based on budgetary concerns, was a pretense or subterfuge intended to deprive him of his job without due process. The Defendants' Motion for Summary Judgment (Doc. 45) is pending, and will be granted.

# I. BACKGROUND

The Plaintiff began his career with the Bentleyville Police Department as a part-time patrolman. In October 1987, he was promoted to Lieutenant, and, in 2004, was named Acting Chief of Police when Chief Joseph Kurilko ("Kurilko") was disabled by a shoulder injury. (Doc. 49 at 10). The record reflects that Kavakich's employment in Bentleyville was unmarked by personal disputes until the individual Defendants, Lena Greenfield ("Greenfield"), Henry Wilson ("Wilson"), Frank Fiem ("Fiem"), Walter Wisnieski ("Wisnieski"), and Kenneth Yankowsky ("Yankowsky") decided to run as a team for Borough Council in 2005. (Doc. 51 Ex. 3 at 37, Ex.4 at 24).

Following their election, but before taking office, these Defendants met at Yankowsky's home to discuss what action they would pursue once their terms began. (Doc. 51 Ex. 5 at 11). They agreed first to replace Borough Solicitor, John Petresik, with Defendant Dennis Makel ("Makel"). Id. at 12. The group also agreed to vote to disband the Borough Police Department which, at the time, was staffed by the Plaintiff, three part-time officers, and Chief Kurilko, who was still on disability leave. As part of the anticipated dissolution of the Department, the group planned to hire Kurilko, who was ready to return to the force, as Public Safety Coordinator to wind up the administrative affairs of the Department. Id. at 45.

It is undisputed that on January 3, 2006, the Borough Council by a vote of five to two - the five including each of the individual Defendants with the exception of Makel - voted to disband the Bentleyville Police Department. At the same time, the five Defendants voted to hire Kurilko as Public Safety Coordinator. Kurilko's employment ran from month to month and

2

consisted of administrative duties including inventorying and destroying outdated evidence, and reviewing, filing, categorizing or destroying police and non-police files that had "piled up in the holding room." (Doc. 51 Ex. G. at 3). Kurilko worked as Public Safety Coordinator for three months, through April 2006.

Shortly after the Council acted, Kavakich's Teamsters Local filed a grievance with Bentleyville challenging the dissolution. For reasons not apparent in the record, this grievance was withdrawn at the request of the union. (Doc. Ex. F). In January 2006, the union filed a second grievance contending that half of the work performed by Kurilko during his tenure as Public Safety Coordinator was "bargaining unit work" which, before the dissolution, had been performed by Kavakich and other police officers. In a decision dated May 30, 2006, an arbitrator concluded that Kavakich, the most senior Department officer at the time of the disbanding, "should have been recalled from layoff to perform such bargaining unit work." (Doc. Ex. G). In compliance with the arbitrator's decision, Kavakich was paid for half of the hours worked by Kurilko - the half that constituted handling evidence and police files.[1]

The Complaint in this matter (Doc. 1) was filed in August 2006.

## II. THE LAW

### A. The Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

---

[1] The arbitrator noted that " there was no dispute on the record that the Borough had the legal right to disband its police department." (Doc. 51 Ex. 6 at 3).

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The mere existence of some evidence favoring the non-moving party will not defeat the motion. Rather, there must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The court must view the facts of record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 847 (3d Cir. 1996).

## B. Section 1983 Claims Against Individual Council Members

"The first issue in a § 1983 case is whether a plaintiff [has established] a deprivation of any right secured by the constitution." D.R. v. Middle Bucks Area Vocational Tech. School, 972 F.2d 1364, 1367 (3d Cir. 1992). Unless the Plaintiff points to facts sufficient to establish a liberty or property interest, his section 1983 claims fail. The Supreme Court has consistently held that "the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.' " Phillips v. Washington Legal Foundation, 524 U.S. 156, 164, (1998) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (paraphrasing Roth, 408 U.S. at 577). If state law creates a property interest for purposes of the Fourteenth Amendment, a person cannot be deprived of that interest other than in accordance with federal standards of due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

4

Kavakich fails to identify the source of a property interest in his job. He does not, however, dispute the Defendants' contention that any interest he may have is grounded in either the Police Tenure Act, 53 Pa. Cons. Stat. §811 et seq., [2] or the Pennsylvania Borough Code, 53 Pa. Cons. Stat. §46171 et seq. [3] The Plaintiff also does not dispute that, for purposes of this

---

[2] Section 812 of the Act addresses the removal of an officer:

> No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violation of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. . . .

Section 814 sets forth guidelines for hearings in the event of suspension or removal of an officer:

> The person sought to be suspended or removed shall demand a public hearing . . . Such person may make written answers to any charges filed against him. The appointing authority shall grant him a public hearing . . . At any such hearing, the person against whom the charges are made may be present in person and by counsel.

[3] Section 46190 of the Code provides, in pertinent part:

> No person employed in any police . . . force of any borough shall be suspended, removed or reduced in rank except for the following reasons:
>
> > (1) Physical or mental disability affecting his ability to continue in service . . . .
> >
> > (2) Neglect or violation of any official duty.
> >
> > (3) Violation of any law . . . .
> >
> > (4) Inefficiency, neglect intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

5

lawsuit, the applicability of these statutes hinges on the number of police officers employed at the time of the employment action; their critical provisions are functionally identical. "Under either . . , full-time municipal police officers enjoy a protected property interest in their position, together with the concomitant right to procedural due process when their employment is terminated." Maule v. Susquehanna Regional Police Com'n, No. 04-CV-05933, 2007 WL 2844587 at *6 (E.D. Pa. September 27, 2007).

The Defendants argue that given the reasons articulated by the Council for the elimination of his job, Kavakich did not have a protected property interest in continued employment, and that Fourteenth Amendment due process guarantees were, therefore, inapplicable. In framing this argument, the Defendants rely primarily on case law holding that although state law may accord police officers certain due process guarantees, these guarantees do not apply in cases where a job loss was occasioned by governmental reorganization. Baker v. Port Royal, No.1:CV-06-0932, 2007 WL 1576439 at *6 (M.D. Pa. May 30, 2007). When a termination is directed at positions rather than individuals, the hearing mandated by the Fourteenth Amendment's due process

---

    (5) Intoxication while on duty.

    (6) Engaging or participating in conduct[ ] of any political or
    election campaign otherwise than to exercise his own right
    to suffrage.

 Section 46191 of the Code reads, in part, as follows:

    If the person suspended, removed or reduced in rank shall demand a
   hearing by the commission . . . [s]uch person may make written answers to any
   charges . . . The commission shall grant him a hearing . . . At [the] hearing, the
   person against whom the charges are made may be present in person and by counsel.

protection need not be held. "In such cases, since there are no charges against the employee . . . involved, there would be no occasion for a hearing, and it would be idle to hold one." Kusza v. Maximonis, 70 A. 2d 329, 331 (Pa. 1950). "Although a property right and procedural due process typically go hand-in-hand - triggering a requirement for 'some kind of hearing' before discharge, [there is] a limited 'reorganization exception' to due process that eliminates the need for a hearing where a reorganization or other cost-cutting measure results in the dismissal of an employee." Whalen v. Mass. Trial Court, 397 F.3d 19, 24 (1st Cir. 2005) (internal citation omitted). This is because "municipalities must have the power to control the orderly and proper functioning of their . . . funds and to react in a responsible manner to economic developments because they and they alone are required to raise tax revenues to fund the programs which are determined to be necessary." McNeil v. Pittsburgh, Civil Action No. 94-1276, 1997 U.S. Dist. Lexis 2034 (W.D. Pa. Feb. 6, 1997) (quoting Camaione v. Latrobe, 567 A.2d 638, 641 (Pa. 1990)).

This reorganization exception has been recognized repeatedly by state and federal courts. See Hartman v. Providence, 636 F. Supp. 1395, 1410 (D.R.I. 1986) (collecting cases). See also McNeil, 1997 U.S. Dist. Lexis 2034 (recognizing reorganization exception in Pennsylvania); Perkiomen Twp. v. Mest, 522 A.2d 516 (Pa. 1987) (same); Kusza, 70 A.2d 329 at 331 (same); Cary v. Altoona, 16 A.2d 1, 2 (Pa. 1940); (same); In re Appeal from Ordinance # 382 of the Borough of Dale, 382 A.2d 145, 148 (Pa. Comwlth. 1978) (same); Slifer v. Dodge, 362 A.2d 471, 473-74 (Pa. Comwlth. 1976) (same); and Ferguson v. Philadelphia, No. 5195, 1954 WL 4284 at * 9 (Pa. Comwlth. 1951) (same). The court in Hartman summarized the policy considerations underlying this rule:

> These cases recognize that, in respect to employment decisions of the administrative type, wide discretion is essential to the effective implementation of important government policies. A "no dismissal except for cause" rule is a shield to armor public employees against unwarranted personal attacks or unfair discrimination by their superiors; it is not a monkey wrench casually to be thrust into the machinery of government in order to frustrate legitimate change.

636 F. Supp. at 1410.

The government's right to reorganize is not absolute, however, and may be challenged. "A municipality cannot "cry 'reorganization' to circumvent . . . the constitutional and statutory protections." Misek v. Chicago, 783 F.2d 98, 100-01 (7th Cir. 1986)). "In Pennsylvania, a former employee can challenge a reorganization or abolition of a position or office by showing that the municipality's actions were 'a mere pretense or subterfuge.'" Id. (citing PerkiomenTwp., 522 A.2d at 520). The definition of "pretense or subterfuge" in this context is extremely narrow. Even the most compelling showing that the Defendants acted to disband the police force based on improper motive [4] is not enough to meet that definitional standard. The law presumes that the Council acted in good faith. In order to overcome this presumption and establish that his job loss was based on pretense or subterfuge, the Plaintiff must point to evidence showing that: (1) the action taken by the Bentleyville Council was designed to evade a court's order; or (2) the Council substantially re-created Kavakich's job under a different name or title. Perkiomen Twp., 522 A.2d at 520.

---

[4] The depositions and affidavits submitted in connection with the Defendants' Motion establish that the individual Defendants - with the exception of Makel - did not like Kavavich, and planned as a group, even before they were elected to Council, to oust him from his position as a police officer. Even though the Court accepts this information as true, the law is clear that evidence of malice does not constitute a basis for the Court's "interfering with, and reversing, the decision of the duly elected [Council]." Perikomen, 522 A.2d at 519.

The Plaintiff contends that his job was substantially re-created when the Council established the position of Public Safety Coordinator, and hired Kurilko to fill it. He argues that the arbitrator's finding of a fifty percent overlap in Kurilko's duties and those formerly undertaken by police officers, "constitutes, as a matter of law, a substantial re-creation of the Plaintiff's position. Alternatively, and at an absolute minimum, the arbitrator's findings create a genuine issue of material fact that should be sent to the jury." (Doc. 50 at 11). In support of this argument, Kavakich cites's Fiem's deposition testimony that Kurilko "stepped in on a month to month basis as being the chief of police to finish the job," id (quoting Doc. 51 Ex. 3 at 46), and Yankowsky's testimony that Kurilko "was hired to handle the evidence room and . . . to perform 'other work that was necessary to the Borough.'" Id. (quoting Doc. 51 Ex. 8 at 48). The Court is not persuaded by Kavakich's reasoning.

The undisputed evidence establishes that no reasonable jury could conclude that the Defendants engaged in the substantial re-creation of Kavakich's position or the Borough's police force. Kavakich's contention to the contrary ignores the fact that he was not the only one affected by the dissolution. Three part-time officers, in addition to Kavakich and Kurilko, lost their jobs. It is equally clear that Chief Kurilko did not return to work as a police officer. He occupied - albeit briefly - a new position as Public Safety Coordinator. This job differed significantly from the one that Kavakich had performed. Kurilko was charged with closing the affairs of the Police Department, and, during the course of that assignment, he was responsible for some of the administrative functions previously handled by police officers. Kurilko's duties as Public Safety Coordinator, when viewed as a whole, however, differed dramatically from those of a police officer. The record does not show that Kurilko had the power to enforce the

9

law, or even to issue citations for violation of the Borough Code. Kavakich does not allege that Kurilko wore a police uniform, carried a weapon or a police badge, or that he drove a police car. See Baker, 2007 WL 1576439 at * 9 (concluding that although part-time code enforcement officer performed some duties formerly carried out by police officer, powers and duties were different, and indicia of authority were not the same). It is undeniable that there was some overlap in duties. That overlap - for which Kavakich was ultimately compensated - cannot, however, reasonably be deemed to constitute a substantial re-creation of the Plaintiff's job, or of the Bentleyville Police Department as a whole. See Campana v. Greenfield, 164 F. Supp.2d 1078, 1093 (E.D. Wisc. 2001) (finding that there was no substantial re-creation of job where new finance director performed duties of new position and those of eliminated treasurer)).

Kavakich's argument that the Borough, in reality, had the wherewithal to continue funding a police department does not change the analysis. "Neither federal nor state law prohibits a state from a good faith effort to conduct its affairs more efficiently, and the state is not required to justify its efforts with proof that the efficiencies are working." Mandel v. Allen, 889 F. Supp. 857, 875 (E.D. Va. 1995).

The Court finds that Kavakich has failed to raise a question of material fact as to whether the Borough's dissolution of its police force constituted pretense or subterfuge directed at depriving him of his job. Where a plaintiff cannot make this showing, the Court lacks the authority to "pry into the motives of a local legislative body." Baker, 2007 WL 1576439 at *9 (quoting Perkiomen Twp., 522 A.2d at 519). As the Pennsylvania Supreme Court explained:

> "The actions of the [Council] are fully reviewable by the voters. Our courts must use self-restraint when asked to review or second-guess decisions of elected municipal officials. Potential review of every legislative decision made in order to find improper personal

10

> or political motives would lead to government by the judiciary. This
> is not wise, and is not the system provided by our Constitution.

Perkiomen Twp., 522 A.2d at 520.[5]

### B. Claims Against Attorney Makel

In the Amended Complaint, Kavakich alleges that Attorney Dennis Makel, who was hired as the Bentleyville Borough Solicitor on January 3, 2006, met beforehand with the other individual Defendants to discuss "plans for actions which [the] Individual Defendants intended to take after they were sworn in as members of the [Borough] Council." (Doc.15 at 3). According to the Plaintiff, "Makel may very well have harbored personal resentment against Plaintiff." (Doc. 50 at 12).

Accepting each of the Plaintiff's allegations as true, the Court finds that there is no colorable basis for the claim against Makel. As the Court has discussed, the Borough Council's abolition of the Police Department did not violate Kavakich's constitutional rights. This conclusion would not change even if it could be shown that Makel colluded in that decision. Furthermore, any role that Makel played in discussions about the Police Department prior to January 2006 is irrelevant for constitutional purposes, because he did not act in concert with any state actor.

### III. CONCLUSION

Kavakich has failed to adduce evidence that would enable a reasonable jury to resolve the

---

[5] Because Kavakich has failed to establish that he was deprived of a constitutional right, he cannot establish municipal liability. "In Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658 (1978), the Supreme Court held that municipal liability under 42 U.S.C. § 1983 cannot be based on the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights. Id. at 691-95." Watson v. Abington Twp., 478 F.3d 144 (3d Cir. 2007).

Fourteenth Amendment claims in his favor. Accordingly, the Defendants' Motion for Summary Judgment (Doc. 45) will be granted pursuant to the Order that follows:

**ORDER**

    **IT IS HEREBY ORDERED THAT:**

    The **MOTION FOR SUMMARY JUDGMENT** (Doc. 45) filed by **DEFENDANTS** in response to the Plaintiff's claims in the Amended Complaint alleging denial of procedural due process pursuant to 42 U.S.C. §1983 is **GRANTED** for the reasons set forth in the accompanying Opinion.

                                /s/ *Amy Reynolds Hay*
                                United States Magistrate Judge

Dated: 23 June, 2008

cc:    All Counsel of Record by Notice of Electronic Filing